## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**DEBORAH LAUFER,**
     **Plaintiff,**

**v.**                                    **Case No: 3:20-cv01297-VAB**


**BRP ASSOCIATES, LLC,**
     **Defendant .**

### PLAINTIFF'S MEMORANDUM IN
### OPPOSITION TO MOTION TO DISMISS

Plaintiff, by and through undersigned counsel, hereby submits this Memorandum in

Opposition To Defendant's Motion To Dismiss, filed at DE 11**.**

**I.      Introduction**

Plaintiff is a disabled person within the meaning of the Americans With Disabilities Act,

42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or cane to ambulate and is

vision impaired. Laufer Declaration, Exhibit A hereto, para. 1. Plaintiff is a resident of Florida.

*Id*. at 1. In the past, Plaintiff encountered frustration when attempting to book rooms at a hotel

because so many online reservations systems fail to identify or allow for booking of accessible

rooms and provide little or no information about whether the features at the hotel are accessible.

In many instances, website claims of "accessibility" prove to be untrue when she arrives at the

hotel. *Id*. para. 3.  As a result, Plaintiff is an advocate, or "tester", for the purpose of bringing

hotel online reservations systems into compliance with the law. *Id*.  Defendant provides the

public with booking services for its hotel through an online reservations system.  (Hereinafter

"websites", "online reservations systems" or "ORS".)  *Id*. at 6. The purpose of this ORS is so that

1

Defendant can reach out and market to persons all over the country and in their own homes  to

solicit their patronage, provide them with information so that they can make a meaningful choice

in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's

ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter

"Regulation"), by identifying and allowing for booking of accessible rooms and providing

accurate and sufficient information as to whether all the features at the hotel are accessible.  On

several different occasions prior to the filing of this lawsuit, Plaintiff reviewed the online

reservations system for Defendant's hotel and found that it did not comply with the Regulation in

any respect. Laufer Declaration, at 6.  Plaintiff therefore filed the instant action for injunctive

relief pursuant to the ADA.

Plaintiff  has a system to ensure that she properly maintains standing. *Id*. at 8. She

maintains a list of all hotels she has sued over ORS violations. She goes through and updates

this list constantly. With respect to each hotel she sues or has sued, she revisits the hotel's ORS

multiple times before a complaint is filed, then again shortly after the complaint is filed. *Id*.

Pursuant to this system, Plaintiff already revisited the hotel's ORS. *Id.* at 8.  When a case is

settled, she records the date when the ORS is required to be complaint and then revisits it. *Id.* By

this system, Plaintiff ensures that she visits each and every hotel ORS multiple times after she

has filed a complaint. Moreover, Plaintiff intends to travel to Connecticut as soon as the Covid

crisis abates. *Id*., para. 5. She will travel all over the State and stay in area hotels. *Id*.  Because

this and other hotels do not comply with the Regulation, Plaintiff is deprived of the information

she needs to make a meaningful choice in planning her trip. *Id.*

Defendant does not challenge the fact that it violates the law or that its online reservations

system discriminates against disabled persons. Rather, Defendant filed its Motion To Dismiss claiming that plaintiff cannot have a cause of action unless she stayed at or intended to book a room at the hotel. Defendant also argues that there is no private right of action for violations of the Regulation. For the reasons below, Defendant's arguments are without merit.

## II.     The Applicable Standard

Defendant's motion is based on Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6).

In instances where the jurisdictional challenge is under Fed. R. Civ. P. 12(b)(1), the issue is whether "the jurisdictional dispute is interwoven with the underlying merits" of the dispute. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2nd Cir. 2013). In that event, the District Court must apply the standards of Rule 56 (applicable to summary judgment) or to 12(b)(6) or leave that issue for trial. *Id*. In the case at bar, the issue is whether or not Plaintiff has suffered an injury-in-fact that is actionable under several provisions of the ADA's statute and Regulation. Thus, Defendant's challenges go to the very heart of the merits of Plaintiff's federal cause of action. For that reason, a credibility determination is inappropriate, as the Court must convert the motion to one of either 12(b)(6) or 56. If a court is going to disbelieve the plaintiff on the issue of standing, it cannot be in the context of a rule 12(b)(1) motion, but must be pursuant to the factfinding process. *Brooke v. Kashl Corp.*, 362 F. Supp.3d 864, 876 (S.D. Ca. 2019).

The standard applicable to Fed. R. Civ. P. 12(b)(6) is as follows:

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); see also *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's*

*Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

*Wood v. Byrd*, 2020 U.S. Dist. LEXIS 19838, *9 (S.D. N.Y. 2020).

    The standard applicable to Fed. R. Civ. P. 56 is as follows:

> A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Accordingly, the Court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); see *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

*Kinney v. Artist & Brand Agency LLC*, 2015 U.S. Dist. LEXIS 160465, ** 33-34 (S.D. N.Y. 2015).  In accordance with the above caselaw and standards, a credibility determination is improper and all pleadings and statements made by Plaintiff must be taken as true and all reasonable inferences be made in her favor. As required by this standard, this Court must accept as true Plaintiff's statements in her pleadings and in her Affidavit that she intends to revisit the Defendant's online reservations system in the near future, that she has in fact revisited it, and that she has a system of ensuring that she revisits the online reservations systems of all hotels she sues.  This Court must also accept as true that Plaintiff intends to travel throughout the State of Connecticut in the near future and stay in area hotels and that the defendant's failure to comply with the Regulation deprives her of the ability to make an informed decision in comparing hotels and their features.

## III.    The Pleadings Are Sufficient

Many courts have upheld the sufficiency of virtually identical pleadings and have rejected challenges against their sufficiency. See, e.g., *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc.*, 19-60613, DE 23 (S.D. Fla. 6/6/19); *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19)(denying motion to dismiss); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19)(denying motion to dismiss); *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020)(holding virtually identical pleadings to be sufficient). Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19); *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality*, LLC, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019); *Kennedy v. Pacifica Tampa Ltd Partnership*, 5:17-cv-442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18). *Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019); *Kennedy v. Astoria Hotel Suites, LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19); *Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019).

The liberal pleading standard applicable to Fed. R. Civ. P. 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'' *Bell Atl.*

5

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is therefore unnecessary that Plaintiff allege in her pleadings her reason for reviewing Defendant's discriminatory online reservations system.

## IV.    Defendant's Argument Is Without Merit

Defendant argues that a disabled plaintiff cannot have a cause of action for encountering a hotel's discriminatory online reservations system unless he/she intends to physically visit the hotel. Defendant cites ONLY ONE case that supports this proposition and Defendant completely ignores the overwhelming slew of cases, on point, in which numerous courts have considered and rejected Defendant's theory.   The entire foundation of Defendant's main argument is misplaced because Defendant fails to understand the nature and locus of the injury. Defendant's entire theory is based on the mistaken proposition that the plaintiff can only suffer past and future injury-in-fact AT the physical property by encountering physical barriers to access or that plaintiff cannot have a cause of action for encountering a discriminatory website unless she intended to book a room at the hotel. (Hereinafter "physical nexus" requirement.) In support of its theory,  Defendant cites authorities that involve discrimination encountered at physical properties, such as *Harty v. Greenwich Hosp. Group, LLC*, 2012 WL 12895766 (D. Conn.), aff'd 536 Fed. Appx. 154 (2nd Cir. 2013)(unpublished opinion), *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F.Supp2d 998 (W.D.N.C., 2011), *aff'd,* 474 F. Appx. 369 (4th Cir. 2012), and *Camarillo v. Carrols Corp*., 518 F.3d 153 (2d Cir. 2008) . These cases, as one court noted, are entirely irrelevant to analyzing standing in cases involving website discrimination.  *Camacho v. Vanderbilt University,* 2019 WL 6528974 at p. 11, 2019 U.S. Dist. Lexis 209202 (S.D.N.Y. 2019). The reason why such cases are entirely irrelevant is because, in physical barrier cases such as *Greenwich Hosp*., the injury is only suffered AT the physical property. In *Greenwich Hosp*.,

the plaintiff was at the physical property when he suffered discrimination in the first instance,

and must return to the physical property to suffer discrimination again. By stark contrast, in cases

involving discriminatory hotel online reservations systems, the injury is suffered in the plaintiff's

own home then they review the website on their own computer.

Defendant ignores the vast body of authorities which have considered and rejected

Defendant's arguments. The arguments raised by Defendant have been raised numerous times by

others, and have been universally rejected.  In *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790

(M.D. Fla. 2020), one court in the Middle District of Florida rejected the defendant's argument

that the plaintiff needed to intend to book a room at the hotel. First, the court held that the

plaintiff sufficiently "alleged he suffered an injury in fact by encountering barriers that violate the

ADA." *Id.*, at **4-5. The court directly rejected the defendant's argument that the plaintiff lacked

standing because he never visited or intended to visit the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features
> of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
> relevant 'future injury' inquiry relates to the motel's website and reservation system, rather
> than the motel's physical property." [Citation omitted.] While Parks may have never
> visited the motel, he visited its website and several third-party sites.

*Id*. at *7.

In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018), a court in the Middle District rejected a physical nexus argument,

holding that the plaintiff's injury occurred in the comfort of her own home when she visited

defendant's discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-

60583-DPG, DE 27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus

argument, stating:

7

Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20), another district court rejected the defendant's arguments (filed at DE 39) that a physical nexus was required between a discriminatory ORS and the physical hotel.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another court rejected a defendant's argument (filed at DE 5) that the plaintiff lacked standing because she did not intend to use the discriminatory ORS to book a room. As the court put it: "[Defendant]'s argument [] centers on whether [plaintiff] suffered a concrete and particularized injury only from visiting [the hotel's] website and not the physical premises. DE 16, at pp. 7-8. In rejecting the defendant's argument, the court held that: "visiting the website suffices" and that "a plaintiff's inability to fully and effectively use an establishment's website constitutes an injury-in-fact." *Id*. at 9. The court further stated:

> [T]he Court finds that [plaintiff] has sufficiently alleged an injury-in-fact as a result of visiting Lakeside's deficient website under 28 C.F.R. § 36.302(e)(1)(ii). She visited the website to review and assess the accessible features of the Lakeside Inn.  Because the website lacked the requisite information, she could not determine whether the physical location met her accessibility needs. Lakeside thus deprived her of the services otherwise available to the general public. These allegations are sufficient to establish a past injury for the purposes of standing.
> ....
> As with the past injury, the Court has previously held in a different context that alleging an intent to return to a website that threatens continued exposure to discrimination is sufficient to establish a threat of future injury. [Citation omitted.] Given the finding above that the alleged injury stems from [plaintiff's] visiting Lakeside's deficient website, the Court finds that the relevant inquiry is whether she is likely to return to the website again.

*Id*. at 9-10, 12.

In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019), another court rejected similar arguments that intent to visit the hotel's website, alone, was insufficient. The court held that the plaintiff's ADA claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry relates to the motel's website and reservation system, rather than the motel's physical property." *Id*.

In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018), a court recognized the plaintiff's motive for returning to the discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that motive to review the website solely to test it was sufficient and that intending to book a room is not required. The court further held that plaintiff's injury in fact is demonstrated by the non-compliance of the hotel's website. *Id*. Other courts rejected the defendants' arguments that the plaintiff lacked standing unless she intended to book a room at the hotel.  See *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20)(rejecting physical nexus argument made at DE 17).

In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20), another court found that the plaintiff suffered discrimination when she visited the non-compliant ORS.  "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. §

36.302(e)(1)*." Id.* at p. 5. Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations system. See *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc*., 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018) (holding plaintiff's allegations that she visited defendant's website but was unable to independently ascertain the accessible features were sufficient to allege an injury-in-fact); *Kennedy v. Floridian Hotel, Inc.*, 2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018) ("[T]he Court finds that Plaintiff has shown that she suffered an injury-in-fact when she encountered the ADA violations on the Website."). *Poschmann v. Liberty Inn Motel, LLC*,  2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019)(court issued ruling on venue holding that injury occurred in plaintiff's home when he visited hotel's discriminatory online reservations system); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017)(holding that the plaintiff suffered injury when she visited the hotel's discriminatory ORS and this occurred where she was located when she reviewed the website);  *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017)(same). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp.  30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website). Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018) ("Plaintiff suffered a concrete injury  when he attempted to access the

website but was unable to fully and effectively utilize it."); *Jones v. Family First Credit Union,*
No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018) (explaining that the
inability to determine a public accommodation's accessibility information via its website
constitutes an injury-in-fact because it is "direct exposure to differential treatment of a person
with a disability."). For example, in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202,
*30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject
property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical
> location itself. Thus, Defendant need not have shown that he intended to "return" to
> Defendant's school in Nashville, Tennessee. He is only required to have established a
> reasonable inference that he intended to return to the Website...

In addition to *Camacho*, many courts have held the Proximity Test [1] was less applicable
(or completely inapplicable) to ORS cases. For example, in *Parks,* 2020 U.S. Dist. Lexis 86790
at *6, the court ruled that the long distance between the hotel and the plaintiff's home weighed in
the plaintiff's favor because hotels cater to travelers from afar.[2]  Numerous other courts have
criticized the Proximity Test's applicability to hotels and website discrimination cases. *Gold Sun*
*Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31; *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist.

---

[1]This test considers such factors as the distance between plaintiff's residence and the
physical property, the plaintiff's frequency of travel in the vicinity of the physical property, and
the plaintiff's ties to the area of the physical property.

[2]Numerous other courts have held that the proximity test is not applicable in the context
of hotels because hotels are, by nature, established to accommodate travelers from afar. *Bodley v.*
*Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008); *D'Lil v. Best Western Encina*
*Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen*
*Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .  *Access 4 All, Inc. v.*
*539 Absecon Blvd.*, 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled
that a plaintiff who lives *too close* to a hotel has no standing to sue for compliance. See *Access 4*
*All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

Lexis 80111, * 9 (M.D. Fla. 2019).  Another court has held that the Proximity test not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).  "The relevant 'future injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's] physical property". *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.

Defendant cites only one case in support of its proposition that a disabled plaintiff must intend to book a room in order to maintain a cause of action for online reservations service discrimination: *Hernandez v. Caesars License Co., LLC*, 2019 U.S. Dist. Lexis 172456 (D.N.J. 2019). However, this case is substantially flawed.  First, it is in conflict with the overwhelming weight of authorities that held to the contrary. Second,  it does not appear that the *Hernandez* court considered the plain language of the statute, the rules of statutory construction, or the overwhelming number of other decisions holding to the contrary, and declined to follow applicable Supreme Court case law.  Third, the *Hernandez* court cited two other court holdings in support of its proposition that intent to book a room is required. However, neither opinion cited stands for such a holding. One case cited by the *Hernandez* Court is *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019). However, the *Juscinska* court only noted in dicta that the plaintiff had the intention of booking a room. It never held that such an intent was required. Noting that the plaintiff intended to book a room is far different from holding that such intent is a requirement of the law.  The second case cited by the *Hernandez* Court was *Poschman v. Coral Reef Of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457  (S.D. Fla. 5/22/18). However, the *Poschmann* decision actually stated that solely testing a

website system for compliance satisfies standing. *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8 ("Plaintiff intends to return to the Website within thirty days to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel ___*or* **to test the Hotel's Website reservation system for its compliance with the ADA**___.")(emphasis added). By this language, the *Poschmann* opinion held the exact opposite of what the *Hernandez* court stated. In sum, the *Hernandez* decision is entirely founded on its own misreading of other cases.[3]

The *Hernandez* Court also completely misinterpreted *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)*, discussed *infra*, by holding that it was about differential treatment rather than the right to information. *Hernandez*, 2019 U.S. Dist. LEXIS 172456, at * 10. The reasoning that *Havens Realty* stands only for differential treatment, rather than informational injury is completely contrary to the weight of authorities. See *Havens Realty*, 455 U.S. at 373-74 (deprivation of plaintiffs' right to truthful information is actionable injury); *Federal Election Commission v. Akins*, 524 U.S. 11, 21 (1998)(citing *Havens Realty* on the point that "[i]ndeed, this Court has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... "); *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019)("informational injury occurs when the defendant refuses to provide the plaintiff with information that a law...entitles him to obtain

---

[3]Defendant also cites *Laufer v. Laxmi & Sons, LLC*, No. 1:19-cv-01501 (BKS/ML), 2020 WL 2200207, at *1-5 (N.D.N.Y. May 6, 2020); *Laufer v. 110 Western Albany, LLC*, No. 1:19-cv-01324 (BKS/ML), 2020 WL 2309083, at *1-2 (N.D.N.Y. May 8, 2020). Reliance on these cases is unavailing, as neither of these courts issued any final ruling. Rather, in both cases the court simply ordered the plaintiff to submit a brief explaining her standing.

and review for some substantive purpose.").[4]

For example, the *Hernandez* Court's holding on this point is completely inconsistent with the Second Circuit's Opinion in *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993), discussed *infra*, which involved a discriminatory advertisement. Obviously, the advertisement, placed in a newspaper, was equally visible by both Black and White persons alike. But whereas seeing the same advertisement did not discriminate against White persons, it did discriminate against Black. A discriminatory hotel online reservations system is no different.

## V. The Rules Of Statutory Construction Require That Defendant's Physical Nexus Argument Be Rejected

It is paramount that the plain words of the Statute and duly promulgated Regulation govern. Several general maxims apply. "Statutory interpretation always begins with the 'plain language of the statute,' which [the court] consider[s] in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009); *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147

---

[4]Numerous Circuit Courts have followed *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) in recognizing informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985)(tester who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Tandy v. City of Wichita*, 380 F3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure).

14

(2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013).  "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable." *Marod*, 733 F.3d at 1334, citing *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.  A court may not read words or elements into a statute that do not appear on its face, including a requirement regarding intent.  See *Bates v. United States*, 522 U.S. 23, 29 (1997)(a requirement of intent to defraud cannot be judicially added). A court is "not allowed to add or subtract words from a statute." *Marod*, 733 F.3d at 1333-34.

In other words, an interpreting Court must look to the plain language of the Statute and Regulation in analyzing whether a disabled person who encounters a discriminatory ORS has a cause of action or whether they must ADDITIONALLY intend to book a room at the hotel or ADDITIONALLY encounter discriminatory conditions located at the physical premises.  More significantly, if such additional restrictive language is found elsewhere in the Statute, but not in the provisions governing the case at bar, such exclusion of the restrictive language is intentional and dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d 56, 60 (2nd. Cir 1997).

Plaintiff's claims are based on the following:

42 U.S.C. Section 12188(a) provides:

The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter....

42 U.S.C. Section 12182(a) provides:

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of

Justice ("DOJ").[5] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter

"Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
...

---

[5]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. The plaintiff's right to injunctive relief is accorded by 42 U.S.C. Section 12188(a), which provides that: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person who is being subjected to discrimination** on the basis of disability in violation of this subchapter..." (Emphasis added.)  A disabled person who encounters a non-compliant ORS becomes entitled to relief under this provision pursuant to two different subsections "of this subchapter".   First, 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..."  A commercial website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). Because a hotel's reservation  website system is a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[6] Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination" includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement

---

[6]An online reservations system may also be characterized as a  privilege or advantage, also referenced in Subsection 12182(a).

can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed. In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers"

limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[7] **did NOT** contain

this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to

Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad

general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679

(citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language

contained in one Subsection of Title III cannot be applied to other Subsections of the same statute

where that language is missing. This "client or customer" analysis was similarly applied by the

*Marod* Court when it held that testers have standing, that they do not need to be a client or

customer, and that their motive is irrelevant. 733 F.3d at 1333-34. However, the *Marod* Court

additionally relied heavily on other similar opinions involving different language and applying

the rules of statutory construction.

    In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes.

Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the

*Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the
> availability of a rental property had alleged sufficient injury-in-fact to support standing
> to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in
> Havens Realty never intended to rent the apartment; rather, his sole purpose was to
> determine whether the defendant engaged in unlawful practices. *Id*.
>     In considering the tester's standing, the Supreme Court in Havens Realty explained
> that the "'the actual or threatened injury required by Art. III may exist solely by virtue of
> statutes creating legal rights, the invasion of which creates standing." *Id. at 373, 102 S. Ct.
> at 1121* (alterations adopted) (quoting *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197,
> 2206, 45 L. Ed. 2d 343 (1975))*; see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93
> S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973)* ("Congress may enact statutes creating legal
> rights, the invasion of which creates standing, even though no injury would exist without the
> statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore

_____

[7]Subsection 12182(a) is the same Subsection that governs the instant action.

critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, 102 S. Ct. at 1121.*

*Marod*, 733 F.3d at 1330. The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]
>      The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374; 102 S. Ct. at 1121.* The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty, 455 U.S. at 374; 102 S. Ct. at 1122.*

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain language of the statute gave a right of action to a civil rights tester who encountered **discriminatory  information** about an apartment **even though they did not intend to rent the apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient.

In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*.

In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection

20

of the applicable statute, but missing from the subsection that applied to the case before it.

Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374.

> In *Marod*, the Court stated:
>
> These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.

The ability or inability to obtain information in violation of a statute was recognized as an actionable injury by the Supreme Court in *Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21.

In *Ragin*,  the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white people. The court noted that the plaintiff's had no intention of actually renting an apartment. *Id.*, at 904. In this regard, the Second Circuit followed *Havens Realty* and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in Havens Realty and the injury suffered by the Ragins and the

Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.] Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

*Ragin*, 6 F.3d at 904.

Under the above cited cases, an ADA plaintiff does not have to be a client or customer or a bona fide customer and his motive or intent are entirely irrelevant. All that is required is that they encounter discrimination within the plain meaning of the words of the statute. This includes discrimination in the form of information without any visit or intent to visit the property which is the subject of that information. There is no additional requirement that they intend to use or visit the physical property, unless the applicable statutory provisions expressly say so. Thus, there is no room left to reach an interpretation that a disabled plaintiff must intend to book a room at a hotel, or actually visit the hotel, before s/he can have a cause of action for encountering a discriminatory online reservations system. Any language imposing such a requirement is completely absent. Neither the general provision of 42 U.S.C. Section 12182(a), the definition of "discrimination" under 42 U.S.C. Section 12182(b)(2)(A)(ii), nor the Regulation contain any such requirement. To the contrary, failure by the Defendant to make its online reservations system compliant with the Regulation constitutes "discrimination" within the meaning of Subsection 12182(b)(2)(A)(ii)**.** This then is prohibited by the general provision of Subsection 12182(a) because the disabled person is deprived of full and equal access to a service. It does not then matter whether an ADA tester intended to do anything more than what is set forth in the statute. The words "no individual shall be discriminated against..." means that **any** disabled person who encounters a discriminatory service has a cause of action, regardless of whether they

22

are a tester and regardless of their intent. Moreover, Subsection 12188's granting of injunctive relief to "any person who is being subjected to discrimination" cannot be interpreted to impose any requirements that would reduce "any person" to "only some people".

To the extent there is any room for doubt, there is in fact **another** subsection of the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C. Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

This Subsection was the subject of an Eleventh Circuit decision in *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002), which involved a telephone screening process for potential contestants on Who Wants To Be A Millionare. The discriminatory telephone screening process ("eligibility criteria"), only became actionable if it additionally screened out disabled persons "from fully and equally enjoying any goods, services..." In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of  ...

services, ..., privileges, advantages..."

Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23 (1997) is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30.

Thus, the plaintiff has standing and there is no additional requirement that she actually visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury[8].  However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy

---

[8]It should be noted that the Fair Credit Reporting Act was intended to protect one class of persons, debtors, from incorrect information provided to a different class of persons, creditors. By contrast, in anti-discrimination statutes such as the ADA, the injury occurs when the disabled person receives the discriminatory information from the defendant.

organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.[9]  Indeed, the concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553 (Thomas J., Concurring). *Havens Realty* was also recognized in *Spokeo*'s dissent. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting).

In *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2nd Cir. 2017, the Second Circuit recognized that: "After all, as "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [and] its judgment is also instructive and important," Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id*. at 80.  The Second Circuit noted that: "A central inquiry, then, is whether the particular bare procedural violation may present a material risk of harm to the underlying concrete interest Congress sought to protect." *Id*. at 80-81. The

---

[9]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

*Crupar-Weinmann* case involved the inclusion of credit card expiration dates on certain information, which was expressly recognized as not increasing the risk of harm (of identity theft) that the statute was intended to prevent. *Id.* 81-82. By contrast, the Regulation and ADA were designed to guard against a hotel providing discriminatory information to disabled persons (or failing to provide them with the required information). The disabled person is the member of the protected class and, when he or she reviews a non-compliant ORS, they suffer discrimination and are deprived of less than full and equal access to the hotel's service. When a disabled person reviews a hotel's website that fails to allow for booking of accessible rooms and fails to provide the information required about accessibility, the harm of discrimination actually occurs.

## VI.    Plaintiff Has Tester Standing

Regardless of the fact that Plaintiff intends to visit Connecticut and stay in hotels and is deprived of her ability to make a meaningful choice for her upcoming trip, Plaintiff has tester standing. Numerous courts, including two circuit courts, have recognized tester standing under Title III of the ADA. *Betancourt v. Ingram Park Mall, LP*, 735 F.Supp.2d 587 (W.D. Tex. 2010). See also *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013). In *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2nd Cir. 6/29/2011)(Summary Order), the Second Circuit recognized the ADA plaintiff's tester status as one reason in favor of standing.

In *Ragin*, 6 F.3d 898 at 904, the Second Circuit recognized the standing of individual testers who serve as private attorneys general (under another civil rights statute) because the statute at issue gave standing to "any person". Specifically, the statute made it unlawful for a

26

person "to represent to *any person* because of race . . . that any dwelling is not available for . . . rental when such dwelling is in fact so available." *Id*. (Emphasis supplied.) It was precisely the same reason why the Eleventh Circuit in *Marod* held that the ADA similarly afforded tester standing. The *Marod* Court held that substantially equivalent language could be found in 42 U.S.C. Section 12182(a), "No individual shall..." and 12188(a) "any person". *Marod*, 733 F.3d at 1332. As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words of the Statute. *Marod*, *passim*.

Moreover, courts have widely recognized the public policy served by plaintiffs acting as "private attorneys general" in enforcing the provisions of the ADA. *See  Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.");  *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999); *Mallory v. Harkness*, 923 F.Supp 1546, 1551 (S.D. Fla. 1996) ("Congress intended Section 1988 to prompt plaintiffs to act as citizen enforcers or private attorneys general advancing our nation;s civil rights objectives and vindicating the liberty of all citizens.").  "Civil rights law depends heavily on private enforcement. Moreover, the inclusion of  penalties and damages is the driving force that facilitates voluntary compliance with the ADA." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000). Courts have noted: "As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be

necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). See also *Harry MackLowe Real Estate Co.*, 6 F.3d at 904 (acknowledging testers right to enforce private attorney general statute).

The result of a private attorney general statute such as the ADA is that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326. Other courts have held that status as a tester " plausibly increases the likelihood that he or she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing  *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury).

In cases such as *Juscinska* and *Camacho*, which discuss a plaintiff's intent to go to the hotel (or apply to the school), such discussion is typically in the context of the court's assessment of the **plausibility** that the plaintiff would return to the website. In other words, what reason does the plaintiff have to revisit the hotel's ORS? For instance, in *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8, the court held that returning to the website to book a room is one valid reason and checking it for compliance with the Regulation is another.

In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed

50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist.

Lexis 209202, at *29. The court addressed this argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future  if he could visit their website" is present in many, if not all, of the other complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states. []. Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future." []
> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. [] Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person.[]. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

*Id*. at. ** 29-31. Thus, regardless of whether or not the plaintiff intends to visit the subject

property, the real issue is whether or not the plaintiff intends to visit the website.

Critically, in the instant case, the Plaintiff has a system whereby she maintains and

constantly updates a list of all hotels she has sued regarding their online reservations systems.

Laufer Declaration, para. 8.  She makes sure she visits the ORS in each case shortly after the

respective complaint is filed, then again when the defendant is required to bring its ORS into

compliance with the law. *Id*. Thus, she insures that she either will again suffer injury if the

defendant does not comply with the law, or will benefit if the defendant does indeed comply.

Under *Parks*, 2020 U.S. Dist. Lexis 86790, at *7, such a system of rechecking suffices to establish standing. Moreover, not only did this Plaintiff visit the hotel's discriminatory online reservations system multiple times before she filed suit, but she has visited it again since filing suit, pursuant to her system. Laufer Affid., paras. 6, 8. Thus, Laufer proved to be true to her word when she averred that she intended to return to the websites in the near future. At least two courts have held that post-complaint visits establish standing. See *Payne v. Boston Market Corp.*, E.D. N.C. 5:12-cv-354, DE 16 (3/12/13); *Kennedy v. Omega Gas*, 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

Essentially, tester standing neither adds nor subtracts from a disabled plaintiff's standing. The issue is whether or not the person has suffered injury within the plain words of the statute and Regulation and the rules of statutory construction govern.

## VII.   Plaintiff Intends To Book A Room In Connecticut Hotels

Although it is not necessary for standing purposes, Plaintiff does indeed intend to visit and travel throughout the State of Connecticut. Laufer Declaration, para. 5. Thus, Plaintiff will be staying in area hotels located throughout the state when she visits. The failure of this and so many other hotels to allow for booking of accessible rooms and failure to provide information about whether or not the features at the hotels are even accessible makes it difficult for Plaintiff to make meaningful choices because she is deprived of the information she needs. *Id.* Accordingly, even if this Court rules that an intent to book a room is required, Plaintiff meets this additional requirement.

## VIII.   Defendant's Argument That There Is No Private Right Of Action Is Without Merit

Defendant also argues that there is no private right of action for violations of the

Regulation. Defendant fails to cite even a single case which holds that there is no right of action under the Regulation.

42 U.S.C. Section 12188 provides: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..." 42 U.S.C. Section 2000a-3(a) provides for the private right of injunctive relief.

The reference in Section 12188 to "this subchapter" includes 42 U.S.C. Section 12182.

To reiterate the Statute's plain language, failure to comply with the Regulation constitutes "discrimination" within the meaning of 42 U.S.C. Section 12182(b)(2)(A)(ii) and also constitutes a failure to provide "full and equal enjoyment of" a "service", in violation of 42 U.S.C. Section 12182(a).

The gravamen of Defendant's argument is that the DOJ exceeded its authority when it promulgated the Regulation.

Congress expressly granted the DOJ promulgation authority by virtue of 42 U.S.C. Section 12186(b),  requiring the Attorney General to issue regulations "applicable to facilities... covered under section 12182 of this title".  In one case involving the Regulation, one Court stated: "[b]ecause Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, the regulations must be given legislative and, hence, controlling weight unless they are arbitrary, capricious or plainly contrary to Statute." *Kennedy v. Gold Sun Hospitality, LLC,* 8:18-cv-842, Hearing Transcript at 29-30 (M.D. Fla. 6/18/18). See also  *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018)(recognizing that the DOJ promulgated the Regulation to carry out the provisions of the

ADA). A regulation promulgated pursuant to Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

Defendant completely fails to provide any analysis regarding the law making powers of the DOJ, of the fact that the Regulation must be given controlling weight. Defendant also fails to explain how or why the host of authorities cited in this Brief have indeed enforced this Regulation.

Defendant and its counsel labor under a fundamental misunderstanding of the law. Indeed, courts have recognized the private right of action for disabled persons encountering violations of the 1991 and 2010 ADA Standards - regulations that were similarly promulgated pursuant to the same statute. The Regulation applicable to hotel online reservations systems was promulgated pursuant to the DOJ's authority, is applicable to Section 12182 and is accorded a private right of action under Section 12188. In making their arguments, Defendant and its counsel simply failed to adequately read the Statute.

It should be noted that similar challenges have been made with respect to a vision impaired disabled person's right to seek injunctive relief pursuant to the ADA in cases involving screen software compatibility of commercial websites. Although these cases involve the same subsections of 42 U.S.C. Section 12182, they do not involve a promulgated regulation at all. Nonetheless, the Eleventh Circuit ruled in *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752 (11th Cir. 2018)(unpublished opinion), that the ADA does apply to commercial websites because they are a service of the public accommodation. In *Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018), the Eleventh Circuit held that a disabled person who encounters a discriminatory commercial website has the right to injunctive relief pursuant to the ADA.  See also *Robles v.*

*Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), *cert. denied*, 2019 U.S. Lexis 5397 (Oct. 7, 2019)(holding that the ADA applies to commercial websites with respect to discrimination claims by vision impaired individuals).

In short, Defendant cites no authority to support its argument, ignores the plain language of the Statute and Regulation and completely overlooks the overwhelming case law which has granted a private right of relief for violations of the Regulation. Moreover, Plaintiff submits that the judicial resources of this Court would not have been wasted if Defendant's counsel had been more careful in copying and pasting the brief from another law firm.

## IX.    Conclusion

For the foregoing reasons, Defendant's Motion is without merit and should be denied.

Respectfully submitted,

For the Plaintiff, Deborah Laufer

By:   L. Kay Wilson, Esq. Fed. Juris ct16084
WILSON LAW LLC
2840 Main Street, #332
Glastonbury, CT 06033
(860)559-3733 Tele/Text
Wilson@KayWilsonLaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October, 2020, a copy of the foregoing Memorandum in Opposition to the Motion to Dismiss was filed electronically and served on all counsel of record via the Court's CM/ECF system.

/s/ L. Kay Wilson, Fed. Juris ct16084